# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3495 | **DATE** | 4/25/2001 |
| **CASE TITLE** | Mary Readel vs. Vital Signs | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the motion of Vital Signs, Inc. [31-1] for summary judgment.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 3 0 2001 | |
| | Notified counsel by telephone. | | date docketed | 84 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY READEL, individually and )
as Independent Administrator of the )
Estate of DONNA LORKE, deceased, )
)
                Plaintiff, )
) No. 97 C 3495
v. )
) Judge Wayne R. Andersen
VITAL SIGNS, INC., a )
New Jersey corporation, )
)
                Defendant. )

DOCKETED
APR 3 0 2001

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of defendant Vital Signs, Inc. for summary judgment pursuant to Fed. R. Civ. P. 56. Vital Signs seeks judgment on all four counts of plaintiff's complaint. Plaintiff filed this action against defendant for Negligence/Wrongful Death (Count I), Negligence/Survival Claim (Count II), Strict Product Liability/Wrongful Death (Count III), and Strict Product Liability/Survival Claim (Count IV). Plaintiff alleges that a Vital Sign's PEEP valve, a component of a respiratory system, caused the injuries that resulted in Donna Lorke's death. Defendant contends there are no facts in the record to conclude that the Defendant's device proximately caused her fatal injuries. For the reasons stated below, we deny the motion for summary judgment.

### Background

Undisputed Facts

Plaintiff, Mary Readel, individually and as Independent Administrator of the estate of Donna Lorke filed the instant Complaint against defendant, Vital Signs, Inc., for the death of Ms. Lorke.

Ms. Lorke died in a hospital after being connected to a respiratory system. The Vital Signs PEEP valve was a component of that respiratory system.

On April 3, 1995, Ms. Lorke entered St. Anthony Hospital in Rockford, Illinois for treatment of symptoms of shortness of breath and dyspnea. On April 6, 1995, medical staff prepared to perform a transesophageal echocardiogram on Ms. Lorke. Before administering the echocardiogram, the medical staff needed to intubate Ms. Lorke and modify the respiratory system to provide oxygen through an endotracheal tube ("ET tube"). The Vital Signs PEEP valve is one of the components comprising the ET tube respiratory system.

Dr. William Towne intubated Ms. Lorke, and a respiratory therapist attached the respiratory system to provide oxygen through the ET tube. Shortly thereafter, Ms. Lorke "began coughing, turned red and coded." The medical staff heard a "popping noise" and the PEEP valve disconnected from the expiratory tubing. The respiratory therapists disconnected the system from the ET tube and initiated CPR and resuscitation efforts. Ms. Lorke died April 7, 1995.

II. Disputed Facts

Plaintiff alleges that Ms. Lorke's injuries resulted from either an improper attachment of the PEEP valve or a manufacturing defect in the valve. Plaintiff maintains that Ms. Lorke suffered from lethally high intrathoracic pressure and that parts of the PEEP valve "popped off" the respiratory system and flew across the room nearly striking Dr. Towne who was standing behind the bed. After reviewing the record, Plaintiff's biomedical expert, Dr. Joseph Dyro, opines that Ms. Lorke's injuries resulted from an occlusion of the subject Vital Signs PEEP valve due to improper attachment or a manufacturing defect. Dr. Dyro concludes that the occlusion prevented exhalation and created a high internal pressure which ultimately caused Ms. Lorke's death.

Defendant maintains that there are no facts in the record that support the conclusion that the Vital Sign's PEEP valve proximately caused plaintiff's injuries. Defendant asserts that in setting up the system, Cheryl North, a respiratory therapist, attached the PEEP valve to the expiratory tubing. North obtained the subject PEEP valve used on Ms. Lorke from the bedside table rather than from a sterile package. Defendant alleges that North properly attached the expiratory tubing to the large port end of the PEEP valve and that nothing was attached to the small port, or exhalation port of the valve. Defendant asserts that North attached the PEEP valve properly and pursuant to the directed warnings and instructions without confusion. After North assembled the expiratory tubing and the PEEP valve, Gail Ingram, a respiratory therapist, inspected and tested the respiratory system. Ingram then confirmed to Deb Dunlap, a registered nurse, that it was working properly before placing the patient on the system. North also visually inspected the system and confirmed to Dunlap that it was set up properly. Defendant denies that an improper attachment of the PEEP valve caused Ms. Lorke's injuries or death.

Defendant alleges that the Vital Signs PEEP valve has two ports of different sizes. The larger, inflow port is attached by an adaptor to the expiratory tubing. The smaller, exhalation port remains open, nothing is intended to be attached to this port. Defendant alleges that expiratory tubing does not fit and cannot be connected to the small port of the PEEP valve.

Plaintiff's expert opines that the inlet and outlet ports of the PEEP valve are the same round shape, the same color, and of similar size. Plaintiff's expert further opines that such design is confusing and increases the likelihood that the valve may be connected in such a manner so as to create a closed, high pressure system. Plaintiff denies that the medical staff properly connected the PEEP valve. In addition, plaintiff's expert determined that the PEEP valve can be attached in such a manner so as to create a closed system preventing exhalation.

3

Plaintiff's expert provides design alternatives which may have prevented an improper connection and Ms. Lorke's injury. Defendant does not dispute that the PEEP valve could have been designed differently or contained different warnings, but argues that these possible changes are irrelevant because the medical staff properly connected the PEEP valve to Ms. Lorke's respiratory system.

Under a theory of negligence, plaintiff's complaint in Counts I and II alleges that defendant negligently: 1) failed to warn physicians and other health care providers adequately regarding the risks of using the PEEP valve; 2) failed to label the PEEP valve package adequately in order to advise physicians and other health care providers regarding the risks of the use of the PEEP valve; 3) failed to label the PEEP valve itself adequately in order to advise physicians and other health care providers regarding the risks of the use of the PEEP valve; 4) improperly designed, manufactured and distributed the PEEP valve so that it could be improperly connected to patients such as Ms. Lorke such that high pressure oxygen had no outflow even though practical, feasible alternative designs were available; 5) improperly designed, manufactured and distributed the PEEP valve so that physicians and other health care providers were not adequately advised of the appropriate means of connecting the PEEP valve; and 6) was otherwise careless and negligent in the manufacture of the PEEP valve.

For the same six reasons, under a theory of strict product liability in Counts III and IV, plaintiff claims that the PEEP valve was defective, unsafe and unreasonably dangerous as it could not be used safely in a patient such as Ms. Lorke.

## DISCUSSION

Summary judgment is appropriate when the court can determine that there is no genuine issue as to any material fact and judgment may be granted as a matter of law. *Cooper v. Lane*, 969

F.2d 386, 370 (7th Cir. 1992). The record and all inferences drawn from it are viewed in the light most favorable to the nonmoving party. *Id.* at 371. Summary judgment must be entered against a party who has failed to establish existence of an element essential to his case, on which he bears the burden of proof at trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

We recognize that defendant, in its reply brief, challenged plaintiff's expert, Dr. Dyro, on Daubert grounds. However, because these arguments were first made in the reply and the plaintiff has not had an opportunity to respond, we will not address them at this time. Furthermore, this court recognizes Dr. Dyro's impressive credentials in the field of biomedical engineering and his extensive review of the record in this case and assumes that he is a qualified expert for the purpose of this motion.

In order to prevail on the negligence and strict product liability claims in Counts I through IV, plaintiff must prove that the alleged negligence or defect proximately caused Ms. Lorke's injury. Wojdyla v. City of Park Ridge, 148 Ill.2d 417, 421 (Ill. 1992)(for a negligence claim the plaintiff must establish that the defendant owed a duty of care, breached that duty, and the breach must have proximately caused the injury); Rios v. Niagara Machine & Tool Works, 59 Ill.2d 79, 83, 86 (Ill. 1974)(to establish strict liability in tort, plaintiff must prove that a product is unreasonably dangerous and that the unreasonably dangerous condition must cause the injury). The requirement to prove proximate cause is the same for negligence and strict liability in tort. Schultz v. Hennessy Industries, Inc., 222 Ill.App.3d 532, 540 (Ill.App.Ct. 1991).

Defendant claims that plaintiff failed to show that the Vital Signs PEEP valve caused Ms. Lorke's injuries because the four witnesses, all hospital personnel who set up the respiratory system, testified that they properly connected the PEEP valve. Defendant emphasizes that plaintiff does not point to any person with personal knowledge whose testimony supports the inference that the

5

medical staff improperly connected the PEEP valve. Indeed, the testimony of these witnesses may well lead a jury to conclude, after trial, that the plaintiff is unable to prove proximate cause.

However, after reviewing the record, plaintiff's expert, Dr. Dyro, concluded to a reasonable degree of biomedical engineering certainty that the most logical explanation is that Ms. Lorke's injuries resulted from an improper attachment of the PEEP valve, or assuming a proper connection, a manufacturing defect. Dr. Dyro determined that the PEEP valve can be attached in such a manner so as to create a closed system preventing exhalation. Dr. Dyro also provided design alternatives which may have obviated the occurrence of an improper attachment.

This court's duty is not to weigh the evidence, but to determine if a genuine issue of material fact exists. The expert's affidavit creates a genuine issue regarding the proximate cause of Ms. Lorke's injuries and death, a material fact for both the negligence and strict product liability claims. Therefore, summary judgment is denied.

## CONCLUSION

For the foregoing reasons, we deny the motion of Vital Signs, Inc. for summary judgment.

Wayne R. Andersen
United States District Judge

Dated: April 25th, 2001